UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *for the use and benefit of* LYNDON STEEL CO.,

                    Plaintiff,

        v.

E.W. HOWELL CO., LLC, *et al.*,

                    Defendants.

**MEMORANDUM DECISION AND ORDER**

26-cv-402 (BMC)

**COGAN**, District Judge.

This is a dispute arising from a construction contract involving a U.S. Department of Energy ("DOE") research lab known as Brookhaven National Laboratory ("BNL") on Long Island. Defendant E.W. Howell ("Howell") was the prime contractor for the project and plaintiff Lyndon Steel Co. ("Lyndon") was a subcontractor. Lyndon completed the work but went unpaid to the tune of $1.5 million. Lyndon sued to recover payment for its services out of the bonds issued by defendants Pacific Indemnity Company and Liberty Mutual Insurance Company (the "Sureties").

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction or, alternatively, to enforce the subcontract's forum-selection clause or dispute-resolution clause which acts as a condition precedent to suit. Lyndon sought leave to amend its complaint to add additional grounds for federal jurisdiction in the event that defendants' prevailed on their primary argument. For the reasons below, the Court dismisses the case for lack of subject matter jurisdiction and denies Lyndon leave to amend as futile.

## BACKGROUND

BNL is owned by the federal government but operated and managed by a private entity, Brookhaven Science Associates, LLC ("BSA"). BSA has a lengthy contract with the DOE that outlines BSA's responsibilities to ensure that it, *inter alia*, "advances the mission goals of the DOE." In sum and substance, BSA manages the property, personnel, and operations of BNL.

As part of its oversight of BNL, BSA entered into a $61.8 million contract with Howell for the construction of "a new administrative building at the main entrance to BNL" dubbed the "Construction of the Science and User Support Center" project. Several times, the contract documents expressly state: "This Contract does not bind nor purport to bind the Government of the United States." The contract required Howell to post a performance bond and a payment bond, both valued at 100% of the contract price. Howell furnished the bonds to BSA via the Sureties and began construction.

About a year into the project, Howell entered into a $5 million subcontract with Lyndon for 5,100 manhours of "structural and miscellaneous steel work." The subcontract contained a choice-of-law and a forum-selection clause, stating, respectively, that the "validity, interpretation, and performance of this Subcontract shall be governed by the laws of the State of New York," and further requiring that any "action or proceeding arising out of, in connection with, or in relation to this Subcontract, shall be brought in the Supreme Court of the State of New York, County of Nassau." The subcontract also contained a dispute-resolution clause, under which Howell and Lyndon "agree[d] they will attempt to resolve through direct negotiation and discussion any dispute, claim, or controversy," including an agreement to "participate in mediation in good faith" and that the "non-binding mediation is a condition precedent to any other form of dispute resolution."

Lyndon worked on the project for the following three years.  Lyndon contends that it performed its end of the bargain, but that Howell shorted Lyndon $1.56 million.  After Lyndon's demands for payment went unresolved, Lyndon turned to the courts.  Lyndon first filed suit in Suffolk County Supreme Court, and that case was dismissed for violating both the forum-selection and dispute-resolution clauses.  See Lyndon Steel Co. v. E.W. Howell Co., LLC, Ind. No. 617490/2025 (Suffolk Cnty. Sup. Ct. Jan. 9, 2026).  Lyndon shortly thereafter filed suit in Nassau County Supreme Court.  See Lyndon Steel Co v. E.W. Howell Co., LLC, Ind. No. 601315/2026 (Nassau Cnty. Sup. Ct. Jan. 19, 2026).

Lyndon, ostensibly trying to insulate itself from the Nassau case potentially being dismissed for violating the dispute-resolution clause, filed this case four days later.  Lyndon invokes the Court's federal question jurisdiction, see 28 U.S.C. § 1331, by asserting that this case arises under the Miller Act, 40 U.S.C. § 3131 et seq.  The Miller Act provides for exclusive federal jurisdiction, thereby rendering the forum-selection clause unenforceable.  See infra § I.

Defendants have moved to dismiss the suit on three grounds: (1) the Court lacks subject matter jurisdiction under the Miller Act; (2) the subcontract requires this case to be brought in another forum; and (3) Lyndon's failure to mediate bars its initiation of a lawsuit.  Lyndon, having identified additional grounds for federal subject matter jurisdiction, sought leave to amend its complaint in the event that defendants prevailed on their Miller Act argument.  As discussed below, the Court lacks subject matter jurisdiction, and any amendment would be futile.

## DISCUSSION

### I.    Miller Act Jurisdiction

Unlike with private construction projects, the federal government's "sovereign immunity bars creditors from enforcing liens on Government property."  Dep't of the Army v. Blue Fox, 525 U.S. 255, 257 (1999).  To protect federal subcontractors, the Miller Act requires the prime

3

contractor performing "construction, alteration, or repair of any public building or public work of the Federal Government" to, *inter alia*, "furnish to the Government [a] payment bond for the protection of all persons supplying labor and material in carrying out the work," when the value of the contract exceeds $100,000.  40 U.S.C. § 3131(b).

The Miller Act "gives the subcontractors and other suppliers 'the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit.'"  Blue Fox, 525 U.S. at 257 (quotations omitted); see also U.S. ex rel. Sherman v. Carter, 353 U.S. 210, 216 (1957) ("The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings.").

The Miller Act is a viable means for Lyndon to escape the subcontract's forum-selection clause because it "vests exclusive jurisdiction over suits on Miller Act bonds in the federal courts."  U.S. ex. rel. Bryan Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d 665, 667 (2d Cir. 1962); 40 U.S.C. § 3133(b)(3)(B) (Miller Act case "must be brought . . . in the United States District Court for any district in which the contract was to be performed.").  In other words, the Miller Act renders unenforceable a state-court forum-selection clause.  See U.S. ex rel. Charles T. Driscoll Masonry Restoration, Co. v. Travelers Cas. & Sur. Co. of Am., No. 17-cv-453, 2017 WL 3701218, at *3 (N.D.N.Y. Aug. 25, 2017) ("courts hearing Miller Act claims will not enforce a forum selection clause that provides only for a state-court forum." (collecting cases)).

In summary, Miller Act jurisdiction is exclusive, and exists when a bond is furnished to the federal government for a contract concerning a public building or public work.  Defendants

contend that no such jurisdiction exists because, even if Howell's contract concerned a public building or public work, the bond was not furnished to the federal government.

## II.    Analysis

Lyndon recognizes that Howell furnished the bonds only to BSA, a private LLC, rather than to the United States or the DOE.  Defendants see this as dispositive, but Lyndon counters that (1) federal regulations required Howell to also include the United States on the bond, and Lyndon should not be penalized for Howell's failure to have done so; and (2) in any event, BSA is an agent of the DOE, so the bond was in fact furnished to the federal government.

### A.    Federal Regulation

DOE contractors like BSA who procure "construction subcontracts in excess of $150,000," such as the one here, must obtain "a payment bond" that "name[s] the Contractor [*i.e.*, BSA] as well as the United States of America as obligees."  48 C.F.R. § 970.5244-1(f)(2).  As Lyndon sees it, if Howell listed the United States on the bond as was required, Miller Act jurisdiction would be clear, and Lyndon should not suffer the consequences of Howell's failure.

There is some intuitive appeal to Lyndon's position, but the Court cannot accept it.  In essence, Lyndon asks the Court to "deem" the United States an obligee on the bond because of what Howell should have done under federal regulations.  But the Court cannot act without subject matter jurisdiction in the first place, and Lyndon's position requires the Court to act in order to establish subject matter jurisdiction.  See Walsh v. McGee, 918 F. Supp. 107, 112 (S.D.N.Y. 1996) ("It is elementary that a federal court cannot create jurisdiction where none exists.").

Indeed, subcontractors are often collaterally damaged when a prime contractor shirks their duties, whether under the Miller Act or otherwise.  As the Seventh Circuit put it, "when a prime contractor on a federal construction project fails to obtain a Miller Act payment bond and

then defaults without paying his subcontractors [it] is the hapless subcontractor" that "is left holding the bag." Arvanis v. Noslo Eng'g Consultants, Inc., 739 F.2d 1287, 1288 (7th Cir. 1984). And that is simply the nature of the business. Subcontractors such as Lyndon who bid on federal projects must exercise some due diligence to make sure the proper safeguards are in place, lest they be left without the statutorily proscribed recourse. Accord Blue Fox, 525 U.S. at 257 (where prime contractor "did not post any Miller Act bonds," subcontractor could not seek redress via "equitable lien . . . on any funds from the [] contract not paid to [the prime contractor]"). That means Lyndon had to, at least, obtain the bond and make sure the United States was an additional insured on it. Accordingly, whether federal regulation required Howell to list the United States on the bond then is irrelevant to whether Miller Act jurisdiction exists now.

### B.    Government Agent

Because "provisions of the Miller Act are 'only applicable where the work in question was contracted for by the United States, or one of its agents or agencies,'" Diversified Carting, Inc. v. City of N.Y., 423 F. Supp. 2d 85, 93 (S.D.N.Y. 2005) (quotations omitted), Lyndon casts BSA as an agent of the DOE. Thus, says Lyndon, Howell having furnished the bond to BSA *ipso facto* constitutes Howell having furnished the bond to the federal government.

To prevail, Lyndon must show that BSA is an agent of, rather than merely a contractor for, the federal government. Lyndon relies almost exclusively on the agreement between BSA and the DOE, under which BSA operates and manages BNL. In addition, Lyndon notes that all BSA employees have ".gov" email addresses and points to cases involving BSA where the court assumed it performed a "federal function." See, e.g., Brookhaven Sci. Assocs., LLC v. Donaldson, No. 04-cv-4013, 2007 WL 2319141, at *6 (S.D.N.Y. Aug. 9, 2007).

6

The contract between BSA and the DOE does not help Lyndon.  First, it has long been held that "[c]ompliance with Government conditions and regulations to meet contract or grant goals does not convert a contractor to an agent of the Government."  United States v. Orleans, 425 U.S. 807, 809 (1976).  Second, the terms of the contract cut in defendants' favor, not Lyndon's, because BSA is referred to as "the Contractor" whereas DOE is referred to as "the Government, its officers, *agents*, and employees."  In other words, the contract itself distinguishes BSA from government agents, such that BSA cannot simultaneously be a government agent.

Lyndon's remaining arguments are unavailing.  First, ".gov" email addresses are hardly indicative of whether its owner is an agent of the federal government.  Not only do most federal contractors have ".gov" email addresses, the employees, contractors, and agents of state and city governments do too.  Next, the cases involving BSA performing a "federal function" are irrelevant, because a "federal function [may be] carried out by a private contractor."  See Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 181 (1988).  Accordingly, Lyndon has failed to establish that BSA is an agent of the DOE, rather than merely a contractor, such that the bond was in fact furnished to the federal government.

For these reasons, the Miller Act does not provide for subject matter jurisdiction, and this case must be dismissed.

## III.    **Leave to Amend**

In its opposition brief, Lyndon raises two additional grounds for federal jurisdiction: 28 U.S.C. § 1352, and the federal enclave doctrine.  Of course, "a party is not entitled to amend its complaint through statements made in motion papers."  Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).  Lyndon appears to recognize this, and has sought leave to amend its complaint in the event its Miller Act argument failed.

Lyndon was only positioned to escape the forum-selection clause because Miller Act jurisdiction is exclusive, rather than concurrent.  See *supra* § I; see also Claflin v. Houseman, 93 U.S. 130, 136 (1876) ("if exclusive jurisdiction" for "the United States courts [is] neither express nor implied, the State courts have concurrent jurisdiction.").  Accordingly, Lyndon's proposed amendment must likewise assert grounds for exclusive jurisdiction.  See, e.g., Ritchie v. Carvel Corp., 714 F. Supp. 700, 703 (S.D.N.Y. 1989)  ("amendment of the complaint will not give this court exclusive jurisdiction over [federal RICO] action" and "the forum selection clause [requires it] be brought only in the Supreme Court of the State of New York").

Lyndon's first additional ground for federal jurisdiction is, by its own text, concurrent. See 28 U.S.C. § 1352 (for "any action on a bond executed under any law of the United States," federal courts' jurisdiction is "concurrent with State courts").

Lyndon's second additional ground for federal jurisdiction fares no better.  Some courts have outright rejected the theory that the federal enclave doctrine confers federal question jurisdiction for civil cases "implicating [a party's] actions [] on . . . federal enclaves."  City of N.Y. v. Exxon Mobil Corp., 733 F. Supp. 3d 296, 309 (S.D.N.Y. 2024), aff'd 154 F.4th 36 (2025).  And courts that have decided otherwise nonetheless found federal jurisdiction to be concurrent, not exclusive.  See Cantu v. Orion Marine Grp., LLC, 510 F. Supp. 3d 453, 459 (S.D. Tex. 2020) ("[F]ederal courts have . . . concurrent original jurisdiction over [] claims that arise on federal enclaves." (quotations omitted)).

Thus, even if Lyndon amended its complaint to assert jurisdiction under § 1352 or the federal enclave doctrine, Lyndon would have to show why the Court should not enforce the forum-selection clause subjecting its claims to New York court.  And, having already filed an identical action in that forum, see Lyndon Steel Co v. E.W. Howell Co., LLC, Ind. No.

8

601315/2026 (Nassau Cnty. Sup. Ct. Jan. 19, 2026), Lyndon has waived that argument.  Cf. Atl.

Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49, 63 (2013) ("plaintiffs are

ordinarily allowed to select whatever forum they consider most advantageous").  Thus, Lyndon's

proposed amendments would be futile.

**CONCLUSION**

Defendants' motions to dismiss are granted.

**SO ORDERED.**

*Brian M. Cogan*

_____

U.S.D.J.

Dated: Brooklyn, New York
      July 20, 2026

9